Dorothy COOPER, Plaintiff,

v.

DIVERSICARE MANAGEMENT SERVICES CO., INC., Defendant.

No. CIV. A. 98-W-194-S.

United States District Court, M.D. Alabama, Southern Division.

May 10, 1999.

Banks Thomas Smith, Dothan, AL, for Plaintiff.

Thomas L. Oliver, II, Gregg L. Smith, Birmingham, AL, for Defendant.

### MEMORANDUM OPINION
### AND ORDER

WALKER, United States Magistrate Judge.

Plaintiff filed the present action on February 23, 1998, alleging that she was discriminated against on the basis of her race during her employment with defendant with regard to pay, promotions, continuing education opportunities, discipline, and other terms and conditions of employment, and that her termination was discriminatory in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. This action is presently before the court on defendant's motion for summary judgment, filed November 13, 1998.

### FACTS[1]

Plaintiff was hired at defendant's nursing home facility early in 1992 to work as a

---

1. As it is required to do, the court has viewed     the evidence presented on the motion for

certified nursing assistant (CNA) on the night shift. (Plaintiff's deposition, pp. 30–31, 33–34). Defendant trained plaintiff for a period of about two months, until plaintiff took and passed her certification examination. (*Id.* at 34–36). Plaintiff worked for a month or two on the night shift, until a day shift CNA position became available. Plaintiff applied and was transferred to the day position. (*Id.* at 43–45). After a couple of months in the position, plaintiff applied for and received a "rehab restorative aid" position. The position did not involve any increase in pay, but plaintiff wanted the job because it allowed more one-on-one work with the patients. (*Id.* at 45–47). In 1993 or 1994, a position became available for Activity Director. Plaintiff completed an application and asked to see the qualifications for the job. She was told that "you had to have a lot of experience in dealing with this."[2] After she was told about the qualifications, plaintiff did not apply.[3] Plaintiff and the white female hired for the position, Kelley Simpson, had both worked with church groups and had worked as CNAs for the same length of time. Plaintiff had been certified as a nursing assistant for a longer period of time. (*Id.* at 49, 110–113). In June 1996, Simpson left the Activity Director position. Plaintiff was offered and accepted the position. Plaintiff was supposed to receive a pay increase after a ninety-day probationary period in the new position; however, she remained in the job for seven months and did not receive a raise. (*Id.* at 49–54). In December 1996, plaintiff asked to attend a class in Montgomery that was required for certification as an Activity Director. Certification was a requirement of the position. Plaintiff did not receive a response to her request. (*Id.* at 114–115).[4]

On January 31, 1997, Michele Polk[5] called plaintiff into Polk's office. Polk told plaintiff that she was placing plaintiff on administrative leave because of a report that plaintiff had physically abused a patient. (*Id.* at 47–48, 79–80). On February 5, 1997, Polk called plaintiff to her office for a meeting. The Director of Nursing, Jo Ellen Lisenby, was present. Polk advised plaintiff that they had investigated the complaint and that "it had changed from a physically abuse to verbal abuse." (*Id.* at 81–84). Polk gave plaintiff a notice of termination. The notice stated that the corrective action resulted from "alleged physical abuse and disrespectful conduct towards a resident in dining room as evidenced by 3 witnesses." (*Id.* at 84; Defendant's Exhibit B).

In a written statement dated January 31, 1997, Thomas Wright, a certified nursing assistant (*see* plaintiff's deposition at 92), stated:

> During 2nd feed at breakfast Mrs. Redwine entered the d.r. and sat down sideways in the chair. Dorothy Cooper asked her to turn around & face the

---

summary judgment in the light most favorable to the plaintiff. *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 (11th Cir.1992). The court notes that some of the documentary evidence may be objectionable as lacking a proper evidentiary foundation. However, the parties have stated no objection to these documents. The court accordingly considers any objections to the use or admissibility of the evidence waived for purposes of this motion. *Davis v. Howard,* 561 F.2d 565, 570 (5th Cir. 1977). However, the court has not considered defendant's Exhibit D. It is a charge of discrimination filed by Teresa Watson against Pinkerton Investigation Services and obviously has no relevance to this case.

2. Plaintiff does not recall who told her this. (Plaintiff's deposition, p. 112)

3. Plaintiff testified, "I tore [the application] up after they told me what the qualifications were, because what they told me about the schooling and all that and just gave me a downer that I'm like, hey, I won't get it because they say these qualifications." (Plaintiff's deposition, p. 113).

4. Plaintiff states that Simpson was certified by defendant while she was employed as Activity Director, citing page 121 of her deposition. (Plaintiff's Brief, p. 2). However, neither party has filed page 121 of the deposition.

5. Both parties refer to Polk as defendant's Administrator. (Plaintiff's Brief, p. 2; Defendant's Brief, p. 2).

table. Mrs. Redwine stated, "I can't honey. I hurt." Dorothy then grabbed Mrs. Redwine around the shoulders & under the legs and jerked her around to face the table. I turned back to the table and started feeding Mrs. Fleming, and I heard Dorothy state, "Oo! Don't pinch me. Pinching people is not a nice thing to do. How would it feel if someone pinched you back?" Mrs. Redwine then began screaming. "Ow, you goddamn asshole! Stop it! That hurts!"

(Defendant's Exhibit C). Linda Bingham, also a certified nursing assistant (*see* plaintiff's deposition at 93) likewise provided a written statement on January 31, 1997:

> During second feed Breakfast Dorithy [sic] Cooper was trying to help Ms Redwine. Ms Redwine pinched Dorthy [sic]. I heard Dorthy [sic] say how does it feel when someone pinches you. I heard Ms Redwine say Oh! that hurts. I didn't see anything but I heard.

(Defendant's Exhibit C). A third certified nursing assistant, Diane Campbell, also provided a written statement dated January 31, 1997. Campbell stated:

> While in dinning [sic] room, on second feed, Mrs. Ruby Redwine was sitting sideways in her chair, and Dorthory [sic] Cooper snached [sic] her, and turned her towards the table. Apparently, Mrs. Redwine pinched Dorthory [sic]. Dorthory [sic] said, "How does it feel to be pinched?," or "How would you like it if I pinched you?" At the same time, Mrs. Redwine was saying "Oh, honey, you're hurting me!" I did not see Dorthory [sic] Cooper pinch her. As a

CNA, and emploee [sic] of this facility, I do not feel her actions apporiate [sic]. (Defendant's Exhibit C).

During the meeting on February 5, 1997, Polk told plaintiff what the witnesses had said. (Plaintiff's deposition at 86). Plaintiff was shocked because she knew that she had not done what was alleged against her. (*Id.*). Plaintiff told Polk that "she got her witnesses to say what she wanted them to say, but I have a witness, a more powerful one than she will have and that's God Almighty . . ." (*Id.* at 86–87). Polk told plaintiff to leave and that if she returned, Polk would have her arrested for criminal trespass. (*Id.* at 87).

Plaintiff testified that she got in trouble if she did not do what she was told to do, but white employees who did not do what they were told did not get in trouble, to plaintiff's knowledge. (*Id.* at 106). When asked how she got in trouble, plaintiff stated, "Well, I was called [by Polk] and said, You know you're supposed to be doing so-and-so. You're supposed to being doing this, you know, like filling the waters, feeding in the dining room." (*Id.* at 106). Plaintiff testified that she did not know if Polk also called white employees to tell them to do what they had been told to do. (*Id.* at 107). Plaintiff further testified that a white custodian was promoted into a dietary position and that the black employees did not know that the position was available. (*Id.* at 119–20).[6]

## THE SUMMARY JUDGMENT STANDARD

A party seeking summary judgment bears the initial burden of demonstrating to the court the basis for its motion, and

---

6. In her brief, plaintiff states that she testified that ". . . yet another black employee, Betty Brown, . . . was terminated for allegedly abusing the very same patient which the plaintiff was wrongfully accused of abusing." However, the deposition testimony plaintiff cites does not fully support her assertion. When asked if Brown was terminated before plaintiff, plaintiff responded, "Yes. Same patient." Plaintiff further testified, when asked if Brown was terminated for patient abuse, "I

don't know if it was for patient abuse or verbal or what. I don't remember, but I know she was terminated." (Plaintiff's deposition, pp. 108–09). Although the court is mindful of its obligation to construe the evidence in the light most favorable to plaintiff, the court cannot construe the evidence to state that Brown was terminated for abusing the same patient, when plaintiff testified that she does not know why Brown was terminated.

identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions that it believes show an absence of any genuine issue of material fact. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir.1993). In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Court held that if a party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to their party's case, and on which their party will bear the burden of proof at trial," summary judgment shall be granted.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue ... Rule 56(e) ... requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial... We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.... Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56 except the mere pleadings themselves...."

*Id.* at 324, 106 S.Ct. 2548.

For summary judgment purposes, an issue of fact is "material" if it is a legal element of the claim, as identified by the substantive law governing the case, such that its presence or absence might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Matsushita Electrical Industrial Compa-*

*ny v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court must view the evidence, and all factual inferences properly drawn from the evidence, in the light most favorable to the nonmoving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir.1992); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.1987). It is improper for this court to weigh conflicting evidence or make credibility determinations; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933–34 (11th Cir. 1989) (citation omitted).

## DISCUSSION
### Promotion Claim

Plaintiff's promotion claim apparently arises from defendant's failure to promote her to the position of Activity Director in 1993 or 1994.[7] Defendant argues that it is entitled to summary judgment on this claim because: (1) plaintiff cannot establish a *prima facie* case because she never applied for the position; and (2) the claim is untimely under both Title VII and § 1981.

*Analytical Framework*

In order to establish a case under Title VII, a plaintiff may use three different kinds of evidence of discriminatory intent: direct evidence, circumstantial evidence or statistical evidence. The analytical framework and burden of production varies depending on the method of proof chosen. If a plaintiff can provide direct evidence of

---

7. When asked for an example of white employees being promoted faster and paid more than black employees with similar or more qualifications and experience, plaintiff discussed only this particular promotion. (Plaintiff's deposition, pp. 110–14). When questioned regarding whether she had additional examples, she testified, "Can't think of any now." (*Id.* at 114). Plaintiff makes no argument that any other promotion claim is at issue. (*See* Plaintiff's Brief, pp. 5–9).

discriminatory intent, then the employer must prove by a preponderance of the evidence that the same employment decision would have been made in the absence of the discriminatory intent.

\* \* \* \* \* \*

Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption. Therefore, remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination.

*Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1330 (11th Cir.1998) (citations omitted).

■ The *McDonnell Douglas/Burdine* framework was established by the Supreme Court for evaluating a Title VII plaintiff's claims of discrimination where there is no direct evidence of discrimination. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1527–28 (11th Cir.1997). This framework is also applicable to claims brought pursuant to 42 U.S.C. § 1981. *See Dybczak v. Tuskegee Institute,* 737 F.2d 1524, 1528 (11th Cir.1984). The plaintiff must first make out a *prima facie* case of discrimination. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089; *Walker v. Mortham,* 158 F.3d 1177, 1183 (11th Cir.1998); *Combs,* 106 F.3d at 1527–28. In cases involving a failure to promote, a plaintiff may establish a *prima facie* case by showing that: (1) she belongs to a racial minority; (2) she sought and was qualified for a position the defendant was attempting to fill; (3) despite her qualifications, she was rejected; and (4) after her rejection, the defendant either continued to attempt to fill the position or in fact filled the position with a person outside the plaintiff's protected class. *Walker, supra,* at 1187–90. "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee. If the trier of fact believes the plaintiff's evidence, and if the employer is silent in the face of the presumption, the

court must enter judgment for the plaintiff because no issue of fact remains in the case." *Id.* (quoting *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089); *Walker, supra.*

If the plaintiff establishes a *prima facie* case, the employer has the burden of producing "legitimate, non-discriminatory reasons for the challenged employment action." *Combs,* 106 F.3d at 1528 (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). "To satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Combs,* 106 F.3d at 1528 (quoting *Burdine,* 450 U.S. at 257, 101 S.Ct. 1089). If the employer articulates a legitimate, nondiscriminatory reason for its decision, the mandatory inference of discrimination arising from the *prima facie* case is destroyed. *Walker,* 158 F.3d at 1184. The plaintiff must then produce evidence "including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs,* 106 F.3d at 1528.

Defendant argues that analysis of plaintiff's promotion claim in accordance with the the *McDonnell Douglas/Burdine* framework demonstrates its entitlement to summary judgment. In response, plaintiff argues that the framework is inapplicable because she has presented direct evidence of discrimination in the form of "Polk's actions of discouraging the plaintiff, advising her not to apply, and misleading her as to the position's qualification requirements." (Plaintiff's Brief, pp. 6–7).

Plaintiff has produced no evidence that Polk made statements that could be considered direct evidence of discrimination. In her deposition, plaintiff testified as follows:

Q. You both applied for the position?

A. Well, after I got the qualifications and, you know, after she told me what was that, it gave me a turnoff.

Q. Now, wait a minute. Who gave you?

A. Michele.

Q. You asked for the qualifications for the job of activity director?

A. Yes.

Q. And Michele gave you the qualifications.

A. It was either Michele or the—I can't think of the other girl's name.

Q. Was it Beverly?

A. Uh-uh. She was activity before Kelley. I think she might have been gone. I can't remember who I was talking to about the qualifications, and they said that you had to have a lot of experience in dealing with this. And it just gave me a turnoff. Like, hey, I've worked. Then I found out what qualifications that Kelley had and what I had, and I was certified much longer than she had been and I had worked with church groups also. And I'm like, what's the difference in the qualifications with hers and mine?

Q. Did you actually apply for the position?

A. After they told me the qualifications, it just gave me a downer. I was, you know—

Q. So you didn't apply?

A. I took the application, filled it out. And when I got the qualifications, I tore it up.

Q. So you never put in an application?

A. No. I tore it up after they told me what the qualifications were, because what they told me about the schooling and all that and just gave me a downer that I'm like, hey, I won't get it because they say these qualifications. But maybe that was wrong on my part. Should have turned it in anyway.

Q. Because they couldn't have considered you for the position unless you applied for it.

**8.** Plaintiff agrees that this is a correct statement of the *prima facie* case. *See* Plaintiff's

A. Correct.

(Plaintiff's deposition, pp. 111–14).

Plaintiff clearly testified that she could not remember with whom she spoke about the job qualifications. If plaintiff did not speak with the person who selected the Activity Director, the conversation set forth above does not provide direct evidence of discriminatory animus in plaintiff's non-selection for the position. *See Standard, supra,* 161 F.3d at 1330 ("[R]emarks by non-decisionmakers or unrelated to the decisionmaking process itself are not direct evidence of discrimination.")(citing *EEOC v. Alton Packaging Corp.,* 901 F.2d 920, 924 (11th Cir.1990)); *Berman v. Orkin Exterminating Company, Inc.,* 160 F.3d 697 (11th Cir.1998)("A statement by a person who played no part in the adverse personnel decision is not direct evidence of discrimination.") (citation omitted).

Additionally, even assuming that plaintiff discussed the qualifications with the selecting official, this testimony provides no "... evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *See Standard, supra,* 161 F.3d at 1330. Accordingly, it does not constitute direct evidence of discrimination, and plaintiff's promotion claim must be analyzed pursuant to the *McDonnell Douglas/Burdine* framework.

### Prima Facie Case

As noted above, plaintiff may establish a *prima facie* case with respect to promotion by showing that: (1) she belongs to a racial minority; (2) she sought and was qualified for a position the defendant was attempting to fill; (3) despite her qualifications, she was rejected; and (4) after her rejection, the defendant either continued to attempt to fill the position or in fact filled the position with a person outside the plaintiff's protected class. *Walker, supra,* at 1187–90.[8]

Brief, p. 6.

Defendant contends that plaintiff cannot establish the second element of the *prima facie* case because she did not apply for the position. Plaintiff argues that she need not submit a formal application, citing *Jones v. Florida Power Corp.*, 825 F.2d 1488 (11th Cir.1987). *Jones* does not address this issue. In *Jones*, the plaintiff did—contrary to plaintiff's argument—formally apply for a promotion. 825 F.2d at 1490. Plaintiff further argues, " ... had the plaintiff in *Jones* presented sufficient evidence of discriminatory intent, the trial court could have correctly found that the supervisor's act of advising the plaintiff against applying for the position was a discriminatory act under Title VII." (Plaintiff's Brief, pp. 7–8). It appears that plaintiff is attempting to assert that her failure to apply should be excused because an application would have been futile.

■ A plaintiff may establish a *prima facie* case without demonstrating that she applied for a position if she shows, instead, that an application would have been futile due to the employer's discriminatory practices. *See Taylor v. Hudson Pulp and Paper Corporation*, 788 F.2d 1455, 1462 (11th Cir.1986); *Henson v. City of Dundee*, 682 F.2d 897, 911 n. 22 (11th Cir. 1982). Plaintiff has not produced any evidence that Polk "discourag[ed] the plaintiff, advis[ed] her not to apply and mis[led] her as to the position's qualification requirements" as she argues (Plaintiff's Brief, pp. 6–7). The evidence on which plaintiff relies is her deposition testimony at pages 111 through 114, set forth above. Even viewing this evidence in the light most favorable to plaintiff, it simply does not create an issue of fact regarding whether an application would have been futile due to defendant's discriminatory practices.

■ Since plaintiff admits that she did not file an application for the position at issue, and since she has not produced evidence creating a genuine issue of material fact regarding whether such an application would have been futile because of her race, plaintiff has not established a *prima facie* case with regard to her claim that she was discriminated against on the basis of her race when she was not selected for the Activity Director position in 1993 or 1994.[9]

## Discharge Claim

Defendant argues that it is entitled to summary judgment on plaintiff's discharge claim because: (1) plaintiff cannot establish a *prima facie* case of discriminatory discharge for violation of a work rule because she cannot point to a similarly situated employee outside her protected class who was treated more favorably; and (2) plaintiff cannot demonstrate that the reason that defendant has articulated for its action—*i.e.*, that plaintiff was discharged for abusing a patient—is pretextual.

### *Prima Facie Case*

■ Plaintiff argues that, since she did not commit the alleged abuse, she need not point to a similarly situated employee who received more favorable treatment. In *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 n. 6 (11th Cir.), *superseded in part on denial of rehearing*, 151 F.3d 1321 (11th Cir.1998), the plaintiff apparently argued that she could establish a *prima facie* case by showing that she belonged to a protected class and that she did not violate her employer's work rule. The court discussed its holding in *Jones v. Gerwens*, 874 F.2d 1534 (11th Cir.1989) and noted that in a case such as this, where the plaintiff was terminated for allegedly violating a work rule, the plaintiff may establish a *prima facie* case of discrimination by showing: "(1) the plaintiff is a member of a protected class; (2) the plaintiff has engaged—either (a) disputedly or (b) admittedly—in misconduct similar to persons outside the protected class; and (3) that similarly situated, nonminority em-

9. In view of this conclusion, the court does not reach defendant's argument that plain-

tiff's promotion claim is untimely.

ployees (that is, persons outside the protected class) received more favorable treatment." *Jones*, 137 F.3d at 1311 n. 6. Under this formulation, according to the Eleventh Circuit, " ... no plaintiff can make out a *prima facie* case by showing just that she belongs to a protected class and that she did not violate her employer's work rule. The plaintiff must also point to someone similarly situated (but outside the protected class) who disputed a violation of the rule and who was, in fact, treated better." *Id. See also Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997)(plaintiff establishes *prima facie* case by showing "(1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job.... If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present."). Plaintiff has not shown the existence of a similarly situated employee here.

However, a plaintiff may instead establish a *prima facie* case by showing that she is a member of a protected class, that she was qualified for her position, that she was terminated and that she was replaced by someone outside her protected class. *See Hawkins v. Ceco Corporation*, 883 F.2d 977, 982 (11th Cir.1989)(citing *Marks v. Prattco*, 607 F.2d 1153 (5th Cir.1979)).[10]

Accordingly, defendant is not entitled to summary judgment on plaintiff's discharge claim on the basis of its argument that plaintiff cannot identify a similarly situated employee outside her protected class who was treated more favorably.

### Proof of Pretext

Even if plaintiff has established a *prima facie* case of discrimination with regard to her termination, she has failed to produce evidence creating a genuine issue of mate-

rial fact as to whether the reason articulated by the employer is pretextual. Defendant has produced evidence that Polk relied on the statements of three witnesses in determining whether plaintiff had violated a work rule. (Defendant's Exhibits B, C). This evidence satisfies defendant's burden of articulating a legitimate reason for plaintiff's termination.

Plaintiff has testified that she did not engage in the conduct of which she was suspected. (Plaintiff's deposition at 86, 92). This testimony, however, sheds no light on the issue of whether Polk believed that plaintiff had violated the employer's rules.

To satisfy this threshold showing of pretext, a plaintiff may discredit the employer's proffered legitimate reasons by showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employment decision, or (3) that they were insufficient to motivate the employment decision.... Reliance on the first method, however, is problematic. *See Kralman [v. Illinois Dep't. of Veterans' Affairs ]*, 23 F.3d [150] at 156 (1994) (there is "a fine line between evidence that appropriately challenges the employer's proffered reasons as being unworthy of credence and evidence that merely shows that the employer made a mistake"). Evidence showing a false factual predicate underlying the employer's proffered reason does not unequivocally prove that the employer did not rely on the reason in making the employment decision. Instead, it may merely indicate that the employer, acting in good faith, made the disputed employment decision on the basis of erroneous information. *Elrod v. Sears, Roebuck, and Co.*, 939 F.2d 1466, 1470 (11th Cir.1991). *See also Lenoir v. Roll Coater, Inc.*, 13 F.3d 1130, 1133–34 (7th Cir.1994)(although employee established

**10.** There is no evidence in the record regarding whether plaintiff was replaced by another individual or establishing the race of any such

replacement. Thus, the court cannot conclude that plaintiff cannot meet this alternate formulation of the *prima facie* case.

that employer's investigation of her conduct yielded an incorrect result, she did not show that the employer did not rely on that result in making its employment decision). It is obviously not a violation of federal employment discrimination laws for an employer to err in assessing the performance of an employee. Thus, establishing pretext is not merely demonstrating that the employer made a mistake, but that the employer did not give an honest account of its behavior. *Walker v. NationsBank of Florida*, 53 F.3d 1548, 1564 (11th Cir.1995)(Johnson, J., specially concurring) (citations omitted). "A plaintiff may accomplish this in a variety of ways. For example, a plaintiff presenting evidence tending to show that the predicate facts underlying the proffered reason were false could also provide evidence that the employer knew them to be false at the time of his purported reliance ...; or, the proffered reason may involve a disputed fact of a kind that it is improbable that the employer could have been mistaken about it." *Id.*, 53 F.3d at 1564 n. 7 (citations omitted). *See also Elrod, supra*, 939 F.2d at 1470 ("Much of Elrod's proof at trial centered around whether Elrod was in fact guilty of the sexual harassment allegations leveled at him by his former co-workers. We can assume for purposes of this opinion that the complaining employees interviewed by Rives were lying through their teeth. The inquiry of the ADEA is limited to whether Rives, Malone and Merrill believed that Elrod was guilty of harassment, and if so, whether this belief was the reason behind Elrod's discharge.").

■  Plaintiff has pointed to no evidence creating an issue of fact about whether Polk was actually motivated to discharge plaintiff by the reports of physical and verbal abuse made by Wright, Bingham and Campbell. At best, plaintiff's testimony that she did not physically or verbally abuse Mrs. Redwine [11] may demonstrate that Polk was mistaken when she relied on the reports. However, plaintiff has failed to offer sufficient evidence from which a reasonable juror could conclude that Polk did not believe plaintiff had committed the charged violations of the employer's rules.[12] Accordingly, defendant is entitled to summary judgment on plaintiff's discharge claim because plaintiff has failed to rebut the legitimate reason for plaintiff's termination articulated by defendant.

### Additional Claims

Plaintiff alleges that "as a black employee she was subject to different standards for investigation and discipline purposes and other terms and conditions of her employment. Plaintiff further contends that white employees with less experience and lower qualifications than similarly situated black employees were promoted faster and paid more than similarly situated equally

11. The evidence on this point is sparse. Plaintiff testified, in response to a question that is not in the record, "... to her was, Oh, that hurt. You wouldn't like anybody to do that to you. She said, no baby, I don't because I know it hurt. She was trying to scratch again. I grabbed her hands to keep her from scratching me again, and that was the only time I put my hands on her." (Plaintiff's deposition, p. 92). Plaintiff also testified that when Polk told her she was terminated, "I was shocked because I know I hadn't did it." (*Id.* at 86).

12. Plaintiff argues, "Not one of these employees states that they saw the plaintiff physically abuse a patient, nor do any of them recall any words amounting to verbal abuse." (Plaintiff's Brief, p. 10). Polk could certainly have inferred from the witness statements that plaintiff physically abused Redwine, and that she was guilty of "discourteous and disrespectful conduct toward a resident." (Exhibit B). Wright stated that plaintiff "grabbed Mrs. Redwine around the shoulders & under the legs and jerked her around to face the table." (Defendant's Exhibit C). Campbell stated that plaintiff "snached [sic] her, and turned her towards the table." (*Id.*). In the absence of evidence that defendant's policy required visual verification of the pinching, the fact that none of the employees claimed to have seen plaintiff pinch Redwine is not evidence of pretext. "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'" *Elrod, supra*, 939 F.2d at 1470 (citation omitted).

or better qualified black employees. She further contends that black employees were denied continuing education opportunities that were given to similarly situated white employees." (Complaint, ¶2).

With regard to her contention that black employees are subjected to different standards for investigation and discipline purposes, plaintiff testified as follows:

Q.... You contend that black employees are subjected to different standards for discipline and investigations.

A. To me, yes.

Q. Give me some factual examples that supports that belief.

A. Seem like we were the ones that was reprimanded more for not doing say the black employees there.

Q. Who is we?

A. It was several like Betty, Betty Brown.

Q. Betty Brown is a black employee?

A. Yes.

Q. And you believe that she was reprimanded?

A. I don't know if she was reprimanded or not. I know she lost her job.

Q. When did she lose her job?

A. A couple of months—I can't remember when she lost. I can't remember the date.

Q. Was it before you were terminated?

A. Yes. Same patient.

Q. For patient abuse?

A. I don't know if it was for patient abuse or verbal or what. I don't remember, but I know she was terminated.

Q. Do you recall any white employees that were being terminated?

A. I don't know—I can't really say because I don't know if it was for the—I don't know. Like I said before, the less you know around there the better off you were.

(Plaintiff's deposition at 108–09). When asked, plaintiff was unable to recall any specific examples of situations in which terms and conditions were different for black employees. (*Id.* at 110).

In response to questioning about her contention that white employees with less experience and lower qualifications than similarly situated black employees were promoted faster and paid more than similarly situated equally or better qualified black employees, plaintiff testified only regarding her non-selection for the Activity Director position, in 1993 or 1994, discussed above. (Plaintiff's deposition at 110–14). When asked for another example where more qualified black employees were not promoted, plaintiff responded, "Can't think of any now." (*Id.* at 114). Plaintiff further testified as follows:

Q. Other than what you've already said, do you have any other examples to support your belief that whites were treated better in job promotions than blacks?

A. I guess just by me being there the length of time that I was there. And the only position, if you are a nurse, you have, you know, a good position. If anything came up for like, say, like supply clerk—I don't know. Maybe it's just because I didn't see blacks being promoted to better themselves or anything like that, you know, in the facility there.

Q. Do you know if any blacks ever complained about that?

A. If they did, it was just among, you know. It's nothing out loud or nothing like that. Just talking in general.

(*Id.* at 116–17).

Defendant argues that it is entitled to summary judgment as to plaintiff's additional claims because of her failure to establish a *prima facie* case. Specifically, defendant argues that "[p]laintiff cannot establish that employees outside her protected class were treated more favorably than her in the terms and conditions of employment." (Defendant's Brief, p. 12).

"As part of the Title VII plaintiff's *prima facie* case, the plaintiff must show that h[er] employer treated similarly situated employees outside h[er] classification more favorably than herself. To make a com-

parison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [s]he and the employees are similarly situated in all relevant respects. . . . If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Holifield*, 115 F.3d at 1562.

■ Plaintiff does not respond to defendant's argument that she has failed to establish a *prima facie* case with respect to her additional claims, and she has not produced evidence of any employee outside plaintiff's protected class and similarly situated to plaintiff who was treated more favorably with regard to investigation and discipline, continuing education, or other terms and conditions of employment. The court has addressed plaintiff's only identified promotion claim above, and has found that defendant is entitled to summary judgment on that claim.[13] "Having failed to meet her burden of proving that [she] was similarly situated to a more favorably treated employee, [plaintiff] has not established a *prima facie* case." *Holifield*, 115 F.3d at 1562. Thus, defendant is entitled to summary judgment on plaintiff's additional claims of 'discrimination.

### CONCLUSION

For the foregoing reasons, it is

ORDERED that defendant's motion for summary judgment is GRANTED, and this action is DISMISSED.

---

**13.** This is an individual disparate treatment case, and not a class action. Thus, evidence of a pattern and practice of discrimination "can only be collateral to evidence of specific discrimination against the actual plaintiff." *Gilty v. Village of Oak Park,* 919 F.2d 1247, 1252 (7th Cir.1990)(quoting *Williams v. Boorstin,* 663 F.2d 109, 115 n. 38 (D.C.Cir.1980)). While evidence of a pattern and practice of discrimination may be relevant to an individual plaintiff's disparate treatment claim, an individual plaintiff may not bring a "pattern or practice" cause of action. *Lowery v. Circuit City Stores, Inc.,* 158 F.3d 742, 760–61 (4th Cir.1998). Accordingly, to the extent that plaintiff seeks to bring a claim that defendant engaged in a pattern and practice of discriminating against other black employees in promotions, the claim is due to be dismissed.