Raymond F. KEEL, Plaintiff,

v.

UNITED STATES DEPARTMENT OF AIR FORCE, et al., Defendants.

No. CIV.A. CV–01–F–1102–N.

United States District Court,
M.D. Alabama,
Northern Division.

March 27, 2003.

Alvin T. Prestwood, Tara Smelley Knee, Prestwood & Associates PC, Robert Bradford Garris, Prestwood & Associates PC, Kathryn Dickey, Richard B. McClelland, Dickey & McClelland, LLC, Montgomery, AL, for plaintiff.

R. Randolph Neeley, Martha Ann Miller, U.S. Attorney's Office, Montgomery, AL, Clarence P. Guillory, Jr., Major, Air Force Legal Services Agency, AFLSA/JACL, Arlington, VA, for defendants.

### MEMORANDUM OPINION AND ORDER

FULLER, District Judge.

### I. INTRODUCTION

On September 14, 2001, Plaintiff Raymond F. Keel[1] (hereinafter "Plaintiff") filed a Complaint (Doc. # 1) against the following named defendants: the United States Department of the Air Force (hereinafter "the Air Force"), the United States Merit Systems Protection Board (hereinafter "MSPB"), and Lawrence S. Delaney (hereinafter "Delaney"),[2] Acting Secretary of the United States Department of the Air Force, challenging his removal from a civil service position at Maxwell Air Force Base in Montgomery, Alabama. Additionally, Plaintiff raises claims that he was the victim of unlawful discrimination in that Defendants terminated his employment on the basis of his race and sex in violation of 42 U.S.C. § 2000e–16,[3] and that Defendants retaliated against him by barring his access to Maxwell Air Force Base (hereinafter "Maxwell") and the Gunter Annex to Maxwell (hereinafter "Gunter"). Plaintiff attempts to litigate this restriction of access claim pursuant to Title VII as a retaliation claim and also as a violation of his rights under the First and Fifth Amendment of the United States Constitution.

This cause is before the court on the motion to dismiss, or in the alternative, motion for summary judgment filed by the defendants on November 27, 2002 (Doc. # 28). After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the Court finds, for the reasons set forth in this Memorandum Opinion, that the motion is due to be GRANTED.

### II. JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 42 U.S.C. §§ 2000e to 2000e–17 (Title VII of the Civil Rights Act of 1964 as amended). The parties do not contest personal jurisdiction or venue, and the Court finds adequate allegations in support of both personal jurisdiction and venue.

### III. STANDARD OF REVIEW

5 U.S.C. § 7703 provides for judicial review of decisions of the Merit Systems Protection Board (hereinafter "MSPB"). In cases such as this one, in which a plaintiff has presented certain discrimination claims before the MSPB, the plaintiff may seek review of the MSPB's decisions

---

1. Plaintiff is a Caucasian male.

2. The Complaint makes it clear that Delaney was sued in his official capacity only.

3. This portion of Title VII prohibits the federal government from engaging in discriminatory employment practices on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e–16(a). Courts also construe this provision as prohibiting retaliation for protected conduct such as making complaints of discrimination.

in district court. *See, e.g., Kelliher v. Veneman,* 313 F.3d 1270, 1274 (11th Cir. 2002), *reh'g denied,* 57 Fed.Appx. 416 (11th Cir. Jan. 7, 2003).

> In these "mixed" cases where discrimination claims as well as claims not based on discrimination were both presented before the Board, the appeals are not bifurcated; instead, the district court has jurisdiction to review both the discrimination and non-discrimination claims.

*Id.*

The non-discrimination claim[4] is not subject to *de novo* review. *Kelliher,* 313 F.3d at 1274–75. Such claims are subject to review on the record and may only be set aside if the Court finds that the agency action, finding or conclusion is found to be: "(1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *See, e.g., Kelliher,* 313 F.3d at 1274–75; 5 U.S.C. § 7703(c). This standard is a "deferential" one. *Kelliher,* 313 F.3d at 1275.

In contrast, review of the discrimination claims in such "mixed" cases is *de novo. Id.* at 1274. For purposes of this *de novo* review, the Court will apply the standards set forth under Federal Rule of Civil Procedure 56(c) and the applicable substantive law.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–23, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine

---

4. In this case, Plaintiff's non-discrimination claim is his challenge to the decision to remove him from his position.

issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c).

## IV. FACTS

The court has carefully considered all deposition excerpts and documents submitted in support of and in opposition to the Defendants' motion. The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following facts:

### A. The Plaintiff

Plaintiff served in the United States Army from October of 1966 until his honorable discharge in 1969. He joined the Naval Reserve in 1976, and at some later date he joined the reserves at Maxwell where he participated until his retirement from the reserves in 1995. In addition to his service in the military and the military reserves, Plaintiff was a civilian employee of the Air Force from July of 1983 until December of 1999. During that time, he held several positions and worked at both Maxwell and Gunter. In December of 1999, when Plaintiff's employment as a civilian employee of the Air Force was terminated, he was an Industrial Equipment Mechanic working on HVAC[5] problems. Notwithstanding this termination, Plaintiff retained access to Maxwell and Gunter as a benefit of being a retired military reservist.

### B. Events Relating to Plaintiff's Employment Prior to His Removal

In 1998, Plaintiff was working as an Industrial Equipment Mechanic at the Civil Engineering Compound at Gunter. On August 17, 1998, Betty Morgan (hereinafter "Morgan"), an African–American female, was transferred to this Civil Engineering Compound where she began work as a Job Controller. In that capacity, Morgan was responsible for dispatching repair personnel to trouble spots around the base[6] and overseeing the distribution of work orders. Morgan replaced Robert Smith (who is also known, and will hereinafter be referred to, as "Smitty"), the previous dispatcher.[7]

After Morgan's arrival at Gunter, there was some dissatisfaction within the unit. At the end of one meeting, Morgan heard someone say "fuck you" to her. Morgan suspected that either employee Ralph Mullins (hereinafter "Mullins") or Cecil Manuel (hereinafter "Manuel") made this statement and she complained to Chief Master Sergeant Howard. It is undisputed that Plaintiff was not involved in this incident.

Although Plaintiff had previously worked with Morgan at Maxwell without any problems, he does admit that he began having problems with her after an incident on September 2, 1998. On that day, at approximately 9:00 a.m., Morgan contacted Plaintiff over the radio to dispatch him to a work order. When Plaintiff received the radio call from Morgan, he was taking a normal break with some other employees at the NCO Club. Morgan told Plaintiff that there was a noise in Building 1143 and that he needed to check it out. He responded over the radio that he needed more information, such as a room number or a location within the building. Morgan responded, in what Plaintiff characterizes as a belligerent fashion, and said something to the effect that "he had been working there long enough that he should know

---

**5.** HVAC stands for "heating, ventilation and air-conditioning."

**6.** Morgan would contact the supervisor in an appropriate repair shop about the problem or she would radio the DIN ("Do It Now") truck

about the location and the nature of the problem.

**7.** The evidence indicates that Smitty and Plaintiff were friends.

where it is." Morgan's harsh response embarrassed Plaintiff, but he nevertheless tried to explain that he needed more information because of the many sections, floors, and mechanical rooms in the building. Morgan's response to this entreaty was even more rude. She said something about not having time to fool with Plaintiff and, according to him, called him a "fool." At that time, Plaintiff turned down the volume on his radio because the other men around him on break had their radios on and there was some "bleed-over noise." Nonetheless, the other employees heard how Morgan had spoken to Plaintiff.

Plaintiff eventually found and repaired the problem in Building 1143, but he was so upset about the radio communications with Morgan that he complained about the incident to his supervisor, Master Sergeant Scott, and asked that Morgan be made to apologize to him. Plaintiff also made a complaint to Morgan's supervisor.[8] After this incident, Plaintiff tried to avoid Morgan as much as possible and communicated with her only when he had to do so.

In September of 1998, Betty Morgan received a typewritten, anonymous, threatening letter at her home address.[9] This letter contained the following message typed in bold, large, uppercase text: "FUCK YOU BETTY NIGGER BITCH NOW GO TO THE CHIEF WE ARE GOING TO GET YOU." There was no return address on the envelope, but it was postmarked September 21, 1998 in Montgomery, Alabama. On October 7, 1998, Morgan received a second typewritten, anonymous, letter at her home. The content of this letter was: "Betty, you dumb Nigger Bitch. You should not have done what you did with your Big Fat Ass Mouth. You need to go back where you belong in 120 days. We are watching you and will get you for this." There also was no return address on this envelope, but it was postmarked October 6, 1998 in Montgomery, Alabama.

These letters frightened Morgan to the extent that for three or four days she was placed in protective custody for her safety. She also increased security at her home by having an alarm system and motion sensor light installed. Further, Morgan began taking prescription tranquilizers and sleeping pills in an attempt to deal with her fear, and started keeping a gun in her bed and car. Almost two years later, Morgan was still scared.[10]

After Morgan received the first letter, she sought the assistance of the local police department and her chain of command. The local police yielded jurisdiction to the Air Force Security Forces Investigation (hereinafter "SFOI") section at Maxwell. As soon as Morgan received the second letter, she provided it to SFOI.

SFOI began an investigation in an attempt to determine who was responsible for the letters. Initially, the investigation focused on the two individuals who had been at the meeting and one of whom was likely to have cursed at Morgan: Mullins and Manuel. Morgan was also asked whether there were any other employees with whom she had any difficulties. Morgan mentioned that she had been having problems with Plaintiff as well, but stated that at that time she felt that it was a professional disagreement rather than a personal problem.

---

8. Neither Master Sergeant Scott nor Morgan's supervisor spoke further with Plaintiff about his complaints.

9. It is important to note that Morgan's home address was not listed in the telephone directory.

10. In late May 2000, Morgan testified at the MSPB hearing that she was still afraid.

The SFOI investigation proceeded with interviews of employees from the shop. The interviews revealed that it was Mullins who had publically cursed at Morgan and that Plaintiff was regarded by his co-workers as being one of Morgan's most vocal opponents. Some of the employees interviewed stated that Plaintiff had expressed a desire to see Morgan leave Gunter and one employee stated that Plaintiff had said "the bitch needs to leave." The employees also stated that Plaintiff had discussed the possibility of preparing an employee petition seeking Morgan's return to Maxwell and Smitty's return to Gunter.

Plaintiff disagrees that he was Morgan's most vocal opponent; he believes Mullins was Morgan's most vocal critic and was the one who called Morgan a "black bitch." He also denies calling Morgan a "bitch" or circulating a petition to try to get Smitty to return to Gunter. Further, Plaintiff denied calling Morgan a "nigger" however, during the investigation, one employee gave a sworn statement in which he stated that he had heard Plaintiff use that term in reference to Morgan.

On October 7, 1998, Plaintiff received a verbal counsel about his use of the radio. At that time, Plaintiff was counseled about turning off his radio and refusing to answer further radio calls from Morgan. Plaintiff denies that he ever did either of these actions and is convinced that this counseling was part of a plan to set him up to take the blame for the letters to Morgan.

On October 8, 1998, an SFOI investigator attempted to interview Plaintiff, but first asked that he be allowed to pat Plaintiff down to make sure Plaintiff was not armed. Plaintiff vociferously objected and indicated that he wanted to speak to his attorney. Plaintiff stated that he did not feel that the military security had any right to treat him this way because he was a civilian employee. Notwithstanding Plaintiff's objections, the investigator grabbed Plaintiff and threw him against the wall injuring his back. The investigator then searched Plaintiff. During the search, the investigator found a pocket calculator and a spiral-bound pocket calendar.[11] When the investigator reviewed the entries in the pocket calendar, the following entries caught his attention: (1) Morgan's home address was written on one page with some other notes; (2) the calendar page for September 2, 1998 had an entry of "09:00 BAD BETTY;" (3) the calendar page for September 21, 1998 had an entry of "DR MURPHY" which was underlined and an entry below of "mailed ltr;" and (4) the calendar page for October 6, 1998 had an entry of "MAILed LTR."

Plaintiff contends that the entries on September 21 and October 6 were reminder notes to himself that he had mailed letters to Doctor Murphy and to his insurance carrier. Plaintiff also explains that the entry on September 2, 1998 was to help him remember the date of the incident when Morgan was abusive to him over the radio, so that he could make an EEO complaint or an union grievance about the incident. Plaintiff further explains that he obtained Morgan's home address from a City Directory at City Hall and that he had obtained it for the purpose of making his EEO complaint or grievance.

On February 16, 1999, Plaintiff had a meeting with Chief Master Sergeant Walker (hereinafter "Walker") and Master Sergeant Alicia.[12] Walker asked Plaintiff

---

11. These personal items belonged to Plaintiff and the pocket calendar was not returned to Plaintiff.

12. Plaintiff's attorney and union representative were present for this meeting.

from what source he had obtained Morgan's home address and for what purpose he had obtained it. According to Walker, Plaintiff stated that he had obtained the address out of a phone book. Plaintiff, on the other hand, denies Walker's statement and states that he always maintained that he had acquired the address out of a City Directory so he could file a grievance against Morgan over the September 2, 1998 radio incident.[13] Walker also asked Plaintiff why he had discussed initiating a petition against Morgan. According to Walker, Plaintiff responded that Smitty suggested a petition and Plaintiff agreed to ask the employees to sign it. However, in a later interview, Smitty contradicted Plaintiff's explanation.

**13.** For purposes of this motion, the Court must credit Plaintiff's testimony that he stated he acquired the address from a City Directory.

**14.** The off-duty misconduct was the sending of the letters to Morgan. The court notes that Plaintiff has steadfastly denied sending these letters.

**15.** In this memorandum, Madsen outlines the efforts she made to verify that Dr. Murphy had received the letters Plaintiff claimed to have mailed to him on September 21, 1998 and on October 6, 1998. Madsen could find no evidence of such letters in the files reviewed at Dr. Murphy's office.

**16.** In *Douglas v. Veterans Admin.*, 5 MSPB 313, 5 M.S.P.R. 280 (1981), the MSPB articulated twelve factors that may be considered in determining the appropriate sanction for a particular offense. These twelve factors are as follows:
(1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;
(2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

## C. The Termination of Plaintiff's Employment

On March 25, 1999, the Air Force proposed Plaintiff's removal. The proposal was amended on March 31, 1999 and stated that the reason for the proposed removal was "off duty misconduct[14] of such significance that there is an adverse effect upon the Air Force." On November 30, 1999, the deciding official John Mann (hereinafter "Mann") made the decision to remove Plaintiff from federal service. Before making this decision, Mann reviewed and considered the information in the written proposal concerning removing Plaintiff, a memorandum from Captain Tracy Madsen,[15] the report prepared by SFOI at the termination of its investigation, and Plaintiff's response. Mann also weighed the "*Douglas*[16] factors" in setting the penalty.

(3) the employee's past disciplinary record;
(4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;
(5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;
(6) consistency of the penalty with those imposed upon other employees for the same or similar offenses;
(7) consistency of the penalty with any applicable agency table of penalties;
(8) the notoriety of the offense or its impact upon the reputation of the agency;
(9) the clarity with which the employee was on notice of any rules that where violated in committing the offense, or had been warned about the conduct in question;
(10) potential for the employee's rehabilitation;
(11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and
(12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.
However, the MSPB is not required to consider all twelve factors in every case; it need

Plaintiff was removed from his employment effective December 4, 1999.

### D. Course of Proceedings before the Merit System Protection Board

Plaintiff filed an appeal of the termination of his employment with the MSPB on December 14, 1999, contending that the decision to terminate his employment constituted race and sex discrimination. The Air Force filed its response to Plaintiff's appeal on January 26, 2000. Plaintiff filed his Pre-hearing Submissions and his exhibits along with a Motion to Strike or in the Alternative Motion in Limine. The Air Force submitted its Pre-hearing Submissions. On May 26 and 27, 2000, Administrative Law Judge Ramon Gomez (hereinafter "ALJ") held a two-day hearing relating to the appeal at which testimony was presented by both sides. During the hearing, Plaintiff proclaimed his good Christian character and testified about his belief in honesty and equal treatment of all human beings. He presented evidence of his good character and denied that he ever used racially or sexually derogatory terms and stated that he was offended by such language.

On June 9, 2000, the ALJ issued an Initial Decision affirming the Air Force's decision to terminate Plaintiff's employment. The ALJ also specifically found

that the record did not support a finding that race was a factor in the termination decision. On August 17, 2000, Plaintiff filed a petition for review[17] with the MSPB challenging the Initial Decision. The Air Force responded to the petition on September 12, 2000. In October of 2000, Plaintiff filed a supplement to his petition for review, and the Air Force again responded. On August 14, 2001, the MSPB issued its Final Decision affirming the Initial Decision.

### E. Plaintiff Is Denied Access to Maxwell and Gunter

After Defendants removed Plaintiff from his employment in December of 1999, he continued to visit the Civil Engineering Compound. According to his deposition testimony, Plaintiff regularly visited his former co-workers and friends when he went to Gunter[18] to purchase products and services. Plaintiff further testified that he never saw Morgan on these visits to see his friends.[19]

Nonetheless, after frequently observing Plaintiff in the vicinity of the Civil Engineering Compound, Morgan[20] expressed to her supervisors that she was not comfortable having Plaintiff around and that she feared his presence. Because of Morgan's discomfort, the Air Force decided to prohibit Plaintiff from entering the Civil Engineering areas of the base.[21]

---

only consider those relevant to the individual case. *Nagel v. Department of Health and Human Servs.*, 707 F.2d 1384, 1386 (Fed.Cir. 1983).

17. Plaintiff's submissions in support of his petition for review included evidence that Morgan had made threats against a fellow employee.

18. As aforementioned, as a retired reservist, Plaintiff had access to the Maxwell and Gunter bases, and use of the BX, the NCO Club, the gas station, and the commissary.

19. Despite this deposition testimony, Plaintiff swears in his Affidavit that Morgan knew he

was visiting Maxwell and Gunter between December of 1999 and July of 2001. He does not state the basis for this knowledge, but it is possible that although Plaintiff did not see Morgan, Morgan saw Plaintiff and someone related that information to him.

20. Morgan was still employed with the Civil Engineering Squadron and worked at the Gunter Annex office.

21. The Air Force determined that Plaintiff's presence at the Civil Engineering Compound created an unhealthy work environment and concluded that, since Plaintiff is no longer employed by the Air Force, he had no legiti-

Defendants contend that Colonel Frances Martin mailed Plaintiff a letter addressing this issue on August 22, 2001, but Plaintiff states that he never received such a letter.[22] Defendants also presented evidence that Major Matthew Bobb (hereinafter "Bobb") called Plaintiff to inform him of the restriction on his access to these portions of the base. Plaintiff denies that Bobb called him and, on the other hand, contends that he called Bobb.

According to Plaintiff, around the end of July of 2001, he received at least two *anonymous* messages on his home answering machine [23] cautioning him that he had been barred from Maxwell and Gunter, and that if he was seen on the bases he would be arrested by the security police. It is clear that these messages could not have been the official notice to Plaintiff from any representative of any Defendant because the gist of the messages was "Keel, don't come out to the base. *They're*

*out to get you.* If you are seen, you'll be arrested; so stay clear." (emphasis added).

After receiving the first or second anonymous message, Plaintiff called Bobb [24] to ask him what was going on. Plaintiff asked Bobb why it was announced that he was barred from the bases and, according to Plaintiff, Bobb could not give him a reason. Although Bobb did not *order* Plaintiff to stay away from the bases, Bobb told Plaintiff that it would be best for him not to visit the bases. Bobb also told Plaintiff to stay away from *all Civil Engineering Buildings and Civil Engineering Complexes.*[25]

Plaintiff contacted his attorney and discussed this development with him. Together with his attorney, Plaintiff decided that it would be best not to go the bases.[26] As a result, on August 7, 2001, Plaintiff filed a Complaint of Discrimination with the federal government, in which he alleged that he had been retaliated against for an exercise of his protected EEO

---

mate business within the Civil Engineering Organization (Def.Ex. 22).

**22.** Plaintiff denies ever receiving any letter relating to the decision to bar him from any part of the bases.

**23.** Plaintiff also testified that he received a third such anonymous message on his answering machine in mid-September of 2001.

**24.** Bobb was the Deputy Commander of Maintenance and Civil Engineers, 42nd Civil Engineering Squadron on the military side. Plaintiff did not explain why he chose to make his query to Bobb.

**25.** According to his Affidavit, Plaintiff believed that because the NCO Club, the Commissary, the BX, and the gas station are maintained by Civil Engineering and have Civil Engineering personnel in them from time to time, he considered them to be Civil Engineering Property. In his Affidavit, Plaintiff also states that Bobb told him to stay away *not* only from the Civil Engineering Complex

and Buildings, but also to stay away from the Maxwell and Gunter bases themselves. Of course, when testimony in an affidavit of a party is in conflict with previous deposition testimony, the Court should rely on the deposition testimony. Holding to the contrary would mean that plaintiffs could "thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Bank of Ill. v. Allied Signal Safety Restraint Sys.,* 75 F.3d 1162, 1168 (7th Cir.1996). Thus, portions of affidavits which are clearly inconsistent with prior deposition testimony are due to be disregarded by the Court. *See, e.g., Rice v. Barnes,* 149 F.Supp.2d 1297, 1300 (M.D.Ala.2001). Accordingly, because portions of Plaintiff's affidavit are clearly inconsistent with his deposition testimony that Bobb told him to *only* stay away from *"all Civil Engineering Buildings and Civil Engineering Complexes,"* the court disregards these portions of Plaintiff's affidavit.

**26.** In his Affidavit, Plaintiff states that *his attorney advised him not to visit the bases at all.*

rights and on the basis of his race and sex [27] because he had been barred from access to the bases.

### F. Plaintiff's Complaints of Disparate Treatment

In addition to complaining of race and sex discrimination during the course of his MSPB appeal, Plaintiff also filed a formal complaint of race and sex discrimination contending that he was subjected to disparate treatment with respect to his punishment.[28] Plaintiff points to Morgan as a person of a different race and sex who was subjected to less severe sanctions for engaging in conduct, which Plaintiff contends, was equally or more egregious to that for which he was wrongfully terminated. Specifically, Plaintiff contends that Morgan received less harsh treatment for more serious conduct. The "serious" conduct, of which Plaintiff complains, is discussed below.

Plaintiff first targets an incident between Manuel and Morgan in which Morgan referred to Manuel as a "son of a bitch." In August of 2000, Morgan was in the process of preparing a schedule for the Civilian Engineering Squadron work crews when Manuel, who was in charge of one of the work flights, failed to give Morgan a weekly schedule. On August 16, 2000, Morgan went to Manuel's office to retrieve the schedule. In Manuel's office, Manuel and Morgan engaged in a heated exchange about when she could expect to receive the schedule. Manuel told her he would get her the schedule by about 2 p.m. and asked her to leave, which she did.

After this conversation with Manuel, Morgan went to see a supervisor and stated to the supervisor, outside of Manuel's presence, that the supervisor had better "take care of that son of a bitch before [she] kill[s] him." This statement referred to Manuel and was made in the presence of witnesses.[29] The incident was investigated and the investigation resulted in a report dated November 3, 2000, which contained the following conclusions: (1) that Morgan made the statements out of frustration, (2) that the statements were not part of a plan or racially motivated, and (3) that the statements were not made directly to Manuel. Morgan received a formal verbal counseling as punishment for her conduct.[30]

27. Despite having made a passing reference in his EEO complaint about the decision to bar him from access to the Air Force bases constituting race and sex discrimination, Plaintiff has not urged the race and sex discrimination theories for his being barred from the bases in this lawsuit. There is no burden upon this Court to distill every potential argument that could be made based upon the materials before it on summary judgment; the onus is on the parties to formulate arguments. *See, e.g. Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.), cert. denied, 516 U.S. 817, 116 S.Ct. 74, 133 L.Ed.2d 33 (1995); *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir.1990), reh'g denied, 921 F.2d 283 (11th Cir.1990); *Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F.Supp.2d 1280, 1286 (M.D.Ala. 2001). Consequently, the Court will not address Plaintiff's abandoned race and sex discrimination claims arising out of the decision to deny him access to Maxwell and Gunter, but will limit its discussion instead to the claims actually urged by Plaintiff's counsel in opposition to Defendants' dispositive motion.

28. Plaintiff made this EEO complaint on January 31, 2001.

29. Morgan later apologized to one witness for this statement.

30. Plaintiff later learned of this incident and formed the belief that it constituted evidence that he had been subjected to disparate treatment because of his race and sex. In turn, Plaintiff filed his January 2001 EEO Complaint alleging disparate treatment on the basis of this incident. The Department of Defense Civilian Personnel Management Service Office of Complaint Investigations (hereinafter "Department") conducted an investigation of Plaintiff's disparate treatment claim. In a report dated May 25, 2001, the Department concluded that the Air Force had legitimate,

Plaintiff next targets an incident between Morgan and a female military dependant. The female military dependant threatened to hit Morgan with a stick if Morgan did not be quiet. Morgan replied that if the female military dependant hit her, someone should call security; implying that if Morgan was indeed struck, she would respond in kind. As a result, Morgan was subjected to disciplinary action in the form of a letter of reprimand for this statement.

## V. PROCEDURAL HISTORY

Plaintiff's Complaint, as filed on September 14, 2001, raised three causes of action. The first included claims brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, for alleged discrimination on the basis of his race (Caucasian) and sex (male). The second cause of action was a challenge to his dismissal from his employment under the Civil Service Reform Act. The third and final cause of action was a claim that Plaintiff was unlawfully denied the privileges of use of Gunter and Maxwell "in violation of his rights to freedom of association and freedom of movement guaranteed to him under the FIRST AMENDMENT to the United States Constitution, and in violation of his rights to due process of law under the FIFTH AMENDMENT to the United States Constitution." Compl. at ¶ 23. Plaintiff clearly alleges that this claim is cognizable "aside from the relief under the Civil Service Reform Act and under Title VII of the Civil Rights Act of 1964, as amended in 1991[.]" *Id.* Defendants filed an Answer (Doc. # 8) to the Complaint on November 19, 2001.

On March 18, 2002, Plaintiff sought leave to file an Amended Complaint and, on March 26, 2002, the Court granted him leave to do so. The Amended Complaint (Doc. # 18), which was filed on March 26, 2002, set forth new facts in Paragraphs 14 and 15 relating to a formal complaint Plaintiff made alleging that the restriction of his base privileges was motivated by a desire to discriminate against him because of his race and sex, and as reprisal against him for his prior Title VII activity. However, Plaintiff made clear that he also still intended to pursue his claims relating to the restriction of his base privileges as violations of his constitutionally protected rights. Defendants answered the Amended Complaint on April 12, 2002. (Doc. # 21).

On November 27, 2002, Defendants filed Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 28). Filed along with the Defendants' motion was a Memorandum in Support of Defendants; Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 29) and a voluminous evidentiary record. On January 3, 2003, Plaintiff submitted Plaintiff's Response to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 39), which included evidentiary exhibits including an affidavit from Plaintiff. Defendants filed a Reply to Plaintiff's Response to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 40) on January 13, 2003.

## VI. DISCUSSION

### A. *Proper Parties*

As previously explained, Plaintiff has named the following as defendants in this action: the Air Force, the MSPB, and Delaney. Defendants argue that the only proper defendants to this action are the current Secretary of the Air Force, James

---

nondiscriminatory reasons for its actions, and that the incidents for which Plaintiff and Morgan were disciplined were not similar.

G. Roche (hereinafter "Roche"), and the Air Force. The court agrees.

As to Plaintiff's Title VII claims, Defendants point to 42 U.S.C. § 2000e–16(c) which provides that an aggrieved party under Title VII may sue the head of the department, agency, or unit. The Eleventh Circuit Court of Appeals has explained that this provision means that, in a Title VII action, the proper defendant is the head of the agency in his official capacity. *See Canino v. United States E.E.O.C.*, 707 F.2d 468, 472 (11th Cir.1983). Thus, with respect to Plaintiff's Title VII claims, the only proper defendant is Roche, in his official capacity as the current head of the Air Force.[31]

■ Moreover, with respect to Plaintiff's claim for review of the MSPB's decision on his removal, the appropriate defendant is the agency, not the MSPB. *See* 5 U.S.C. § 7703(a)(2) ("The Board shall be named respondent in any proceeding brought pursuant to this subsection, *unless the employee or applicant for employment seeks review of a final order or decision on the merits on the underlying personnel action or on a request for attorney fees, in which case the agency responsible for taking the personnel action shall be the respondent.*") (emphasis added).

Further, in his submissions in opposition to Defendants' motion, Plaintiff has conceded that the only proper defendant to the MSPB claim is the Air Force. (Doc. # 39 at p. 15). Plaintiff has also conceded that the only proper defendant to the Title VII claim is Roche. *Id.* Accordingly, it is clear from these concessions, and the foregoing principles, that all claims against Delaney and the MSPB are due to be DISMISSED.

The proper defendants for the *Bivens* action claims will be discussed below.

## B. Plaintiff's "Bivens" Action [32]

■ The sole defendants named in this lawsuit are either agencies or departments of the federal government, or officials of the federal government sued in their official capacities. In support of the claims in Plaintiff's third cause of action for alleged violations of rights under the United States Constitution, Plaintiff invokes[33] the implied cause of action recognized in *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).[34] The United States Supreme Court has held that a *Bivens*-type of implied cause of action is not available for suits against agencies of the federal government. *See Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 484–486, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994).[35] Thus, the claims made in Count

---

**31.** By operation of Federal Rule of Civil Procedure 25(a)(d)(1), Roche is automatically substituted for Delaney because Delaney was a public officer sued in his official capacity who ceased to hold office during the pendency of the action.

**32.** For the sake of being thorough, the court addresses the merits of Plaintiff's *Bivens* action even though Plaintiff indicated that said action was withdrawn.

Since the government in this case concedes that this Plaintiff has access to all of the Title VII and MSPB remedies in this case, the Plaintiff does not need to pursue the alternative *Bivens* route, and respectfully

suggests that those claims be considered as being withdrawn.

(Doc. # 39, Plaintiff's Response to Defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment, p. 15).

**33.** Doc. # 39 at p. 14.

**34.** In *Bivens*, the United States Supreme Court implied a cause of action for damages against federal agents, who allegedly violated the United States Constitution.

**35.** Plaintiff's suit against agencies of the federal government is not just stymied by his invocation of *Bivens* as the source of substan-

III fail as a matter of law to the extent that they are brought against the MSPB or the Air Force, as both are agencies of the federal government.

 The claims set forth in Count III are not viable against the remaining defendant, Roche, because he is a federal official sued *only* in his official capacity. A suit against an official of the federal government in the officer's official capacity is considered a suit against the United States. *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Owens v. Fulton County*, 877 F.2d 947, 951 n. 5 (11th Cir.1989). Plaintiff may not sue a federal official in his official capacity pursuant to *Bivens*. *See, e.g., Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir.2002); *Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir.2000); *Affiliated Professional Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir.1999); *Jones v. Internal Revenue Serv.*, 216 F.Supp.2d 955, 960 (D.Neb. 2002); *Leonard v. Rumsfeld*, 146 F.Supp.2d 1227, 1231 (M.D.Ala.2001). Consequently, Roche is entitled to judgment as a matter of law on all claims against him in Count III of the Complaint and Amended Complaint.

While the foregoing findings dispose of all of Plaintiff's *Bivens* claims, the Court notes that Defendants have urged numerous additional bases for the dismissal of such claims. While the Court will not address all of the additional bases, it does find that Defendants' argument that Title VII is the exclusive remedy for Plaintiff's

reprisal claims is an alternate basis for its holding that Defendants are entitled to judgment as a matter of law on Plaintiff's *Bivens* claims. A former federal employee's claims of discrimination or reprisal may not be brought pursuant to *Bivens* and its progeny because such claims must be brought pursuant to 42 U.S.C. § 2000e–16. *See, e.g., Porter v. Adams*, 639 F.2d 273, 277–78 (5th Cir. Mar.13, 1981).[36] Thus, Plaintiff's sole avenue of recourse for the claims he articulates in Count III of the Amended Complaint is Title VII, and a *Bivens* action provides him with no relief. Accordingly, Plaintiff's *Bivens* claims against the Defendants are due to be DISMISSED.

## C. Review of the MSPB Decision to Remove Plaintiff

This Court has reviewed the entire record of the MSPB process. Based on this review, the Court finds that the MSPB's decision with respect to Plaintiff's removal must be affirmed. There is no evidence that the MSPB's decision was arbitrary, capricious, an abuse or discretion, or otherwise not in accordance with the law. Further, there is no evidence that the MSPB's decision was obtained without procedures required by law, rule, or regulation having been followed. There is also no evidence that the MSPB's decision was unsupported by substantial evidence. Thus, there is no basis for this Court to take any action other than to affirm the decision.

tive law upon which he relies to provide an avenue of relief. "Absent a waiver, sovereign immunity shields the federal government and its agencies from suit." *Meyer*, 510 U.S. at 475, 114 S.Ct. 996. There is no evidence in this case that any of the governmental defendants have waived their sovereign immunity. For this additional reason, Plaintiff's constitu-

tional claims against the Defendant agencies fail as a matter of law.

**36.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

### 1. Not Arbitrary or Capricious

■ The decision of the MSPB to remove Plaintiff was based on a consideration of the relevant factors and did not constitute a clear error in judgment.

> In determining whether the outcome in an adjudication before an administrative agency such as the MSPB is arbitrary and capricious [a reviewing court does] not substitute [its] judgment for that of the agency but rather only seek[s] to ensure that the decision was reasonable and rational. *Zukas v. Hinson,* 124 F.3d 1407, 1409 (11th Cir.1997). "Along the standard of review continuum, the arbitrary and capricious standard gives [a reviewing court] the least latitude in finding grounds for reversal." *North Buckhead Civic Ass'n v. Skinner,* 903 F.2d 1533, 1538 (11th Cir.1990) (citations and internal quotations omitted). We must only "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment." *Id.* at 1538 (citations and internal quotations omitted).

*Kelliher,* 313 F.3d at 1276. The parties in this case are in agreement that the relevant factors set forth in *Douglas v. Veterans Admin.,* 5 MSPB 313, 5 M.S.P.R. 280 (1981), were considered and applied to Plaintiff's claims. Rather than arguing that the applicable factors were not applied, Plaintiff contends in a most conclusory fashion that the MSPB failed to explain certain issues to his satisfaction and consequently, the "weighing" of the *Douglas* factors "seems to have been heavily balanced against this Plaintiff." Because this Court finds that the relevant factors were considered and further finds that there was not a clear error in judgment, the Court finds that the decision was not arbitrary, capricious, an abuse or discretion, or otherwise not in accordance with the law.

### 2. Without Regard to Law

It does not appear that Plaintiff raises a challenge to the MSPB decision on this basis. Nonetheless, this Court's independent review of the record reveals no basis for finding the decision to remove Plaintiff was obtained without procedures required by law, rule, or regulations having been followed. The proposal to remove Plaintiff set forth the basis for the action and the supporting reasons. Plaintiff had an opportunity to respond to this proposal, and he did so. Following a careful deliberation over the evidence, including the investigative report, and an application of the *Douglas* factors, the deciding official effected the Plaintiff's removal. Plaintiff received a full and fair hearing under the applicable procedures of the MSPB. He was represented by counsel of his choosing, testified on his own behalf, called witnesses, submitted evidence, and his counsel had broad latitude in cross-examining witnesses. The ALJ rendered a written decision, which Plaintiff had an opportunity to challenge by a petition for review by the full MSPB. Plaintiff was allowed to present new evidence and to attempt to show that the ALJ's decision was based on an erroneous interpretation of a statute or regulation. Accordingly, this court concludes that there is no basis for disturbing the decision of the MSPB based on the procedures by which the decision was obtained.

### 3. Substantial Evidence

■ Plaintiff's second challenge to the decision of the MSPB appears to be that its decision was not supported by substantial evidence. Because the Court finds that there existed substantial evidence to support the decision of the MSPB, it rejects Plaintiff's challenge on this basis.

When reviewing administrative decisions to determine if they are supported by

substantial evidence this court examines the entire record but defers to the agency's factual determinations as long as there is relevant evidence that supports the findings as reasonable. *Fort Valley State Coll. v. Bennett,* 853 F.2d 862, 863 (11th Cir.1988); *City of Pompano Beach v. FAA,* 774 F.2d 1529, 1539–40 (11th Cir.1985). This deferential standard of review means that as long as the conclusion is reasonable, we defer to the agency's findings of fact even if we could have justifiably found differently. *Fort Valley State Coll.,* 853 F.2d at 864, 866; *City of Pompano Beach,* 774 F.2d at 1540. We do not re-weigh or re-examine the credibility choices made by the fact-finder. *Fort Valley State Coll.,* 853 F.2d at 866.

*Kelliher,* 313 F.3d at 1277. A review of the record reveals that there was relevant evidence before the MSPB that supported its determinations. Indeed, the evidence and testimony presented support the factual findings made, and factual findings involving contested facts were supported by credibility determinations included in the record. Based on these conclusions, the Court finds the MSPB's conclusions with respect to Plaintiff's removal to be reasonable and supported by substantial evidence.

### D. Plaintiff's Title VII Claims Relating To The Termination Of His Employment

Plaintiff contends that Defendant [37] terminated his employment because of his race and sex. Defendant argues that he is entitled to summary judgment on this claim because Plaintiff cannot establish a *prima facie* case of discrimination with respect to the termination of Plaintiff's employment and because it has proffered a legitimate, non-discriminatory reason for its actions. Plaintiff appears to argue that he has established a *prima facie* case of discrimination by pointing to facts which he contends establish that he did not engage in the conduct alleged by Defendant. For the reasons set forth below, the Court finds that Defendant is entitled to summary judgment because Plaintiff has failed to establish a *prima facie* case. Moreover, even assuming *arguendo* that Plaintiff has established a *prima facie* case, the Court further finds that no reasonable jury could find that Defendant's proffered legitimate, non-discriminatory reason was a pretext for discrimination.

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a). The critical element in establishing wrongful discrimination in violation of Title VII is discriminatory intent. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Such discriminatory intent can be established through either direct or circumstantial evidence. *See, e.g., Davis v. Qualico Miscellaneous Inc.,* 161 F.Supp.2d 1314, 1319 (M.D.Ala.2001). Where, as here, a plaintiff seeks to prove intentional discrimination through circumstantial evidence [38] of the employer's intent, the Court applies some version of the familiar tripartite burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and its progeny. Under this framework, the plaintiff has the initial burden of

---

**37.** As aforementioned, the only proper defendant to the Title VII claims is Roche; thus, the court addresses these claims as applicable to Roche only.

**38.** Because Plaintiff offers nothing which could conceivably be considered direct evidence, the Court will analyze this motion for summary judgment under the circumstantial evidence paradigm.

establishing a *prima facie* case of discrimination. *See, e.g., Combs v. Plantation Patterns,* 106 F.3d 1519, 1527–28 (11th Cir. 1997), *cert. denied,* 522 U.S. 1045, 118 S.Ct. 685, 139 L.Ed.2d 632 (1998). The purpose of the *prima facie* case is to show an adverse employment decision that resulted from a discriminatory motive. *See, e.g., Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1143 (11th Cir.1983).

▆▆▆ In this case, Plaintiff claims that the termination of his employment was discriminatory.

> A plaintiff's prima facie case for a discharge-discrimination claim must show the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff was qualified for the position at issue; (3) the plaintiff was discharged despite his qualification; and (4) the plaintiff was subject to differential treatment, that is, he was either (a) replaced by someone who was not a member of the plaintiff's protected class or (b) a similarly situated employee who was not a member of the protected class engaged in *nearly identical conduct* and was not discharged.

*Davis,* 161 F.Supp.2d at 1319 (emphasis added). *Accord, Williams v. Motorola,* 303 F.3d 1284, 1293 (11th Cir.2002). Importantly, an employee cannot establish a *prima facie* case of discrimination by simply arguing that he belonged to a protected class and that he did not engage in the conduct for which he alleges his employment was terminated. *See, e.g., Jones v. Bessemer Carraway Med. Ctr.,* 137 F.3d 1306, 1311 (11th Cir.), *superseded in part on denial of reh'g,* 151 F.3d 1321 (11th Cir.1998)[39]; *Cooper v. Diversicare Mgmt. Servs. Co.,* 115 F.Supp.2d 1311, 1318–19 (M.D.Ala.1999).

▆▆▆ The parties do not dispute that by virtue of his race and sex Plaintiff is a member of protected classes and that he was qualified for the position he held. It is similarly undisputed that Plaintiff was subjected to an adverse employment action when his employment was terminated. Thus, the only element of the *prima facie* case at issue, is the final element, namely, that Plaintiff was subjected to differential treatment. As previously explained, Plaintiff must show either that he was replaced by someone outside of the protected class or that a similarly situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged. In this case, there is no evidence from which a reasonable jury could find that Plaintiff was replaced by someone outside of his protected class, and indeed, Plaintiff has not argued this method of establishing the final element of a *prima facie* case.

The sole issue before this court is whether there is any evidence from which a reasonable jury could find that a similarly-situated employee who was not a member of the protected class engaged in nearly identical conduct and was not discharged. Should Plaintiff fail to produce sufficient affirmative evidence to establish that the employees to which he would compare himself "were similarly situated in all aspects, or that their conduct was of comparable seriousness to the conduct for which he was discharged[,]" he would fail to meet his burden of proving that he was similarly situated to a more favorably treated employee and fail to establish a *prima facie* case. *See, e.g., Holifield v. Reno,* 115 F.3d 1555, 1563 (11th Cir.1997). In the context of analyzing disciplinary

---

**39.** The Eleventh Circuit Court of Appeals withdrew part of its opinion in this case on rehearing and substituted a new section which can be found at *Jones v. Bessemer Carr-* *away Med. Ctr.,* 151 F.3d 1321 (11th Cir. 1998). Nothing in this Memorandum Opinion is based on the portion of the opinion in *Jones* which was withdrawn on rehearing.

actions, the most important factors are the similarity of the nature of the offenses committed and the similarity of the nature of the punishments imposed. *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir. 1999). The Eleventh Circuit Court of Appeals requires "that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id.* In making this analysis a Court must keep in mind that "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules[.]" *Id.* at 1369.

Plaintiff points to the conduct in which Morgan, an African–American female, engaged as evidence of conduct sufficiently similar to that for which Plaintiff was removed from his employment and asserts that Morgan received a significantly less severe punishment. The real issue before this Court is whether Morgan's conduct is sufficiently similar to that in which Defendant believed Plaintiff engaged to satisfy the "nearly identical" conduct which would allow Plaintiff to establish a *prima facie* case. The Court finds as a matter of law that Morgan's conduct of engaging in illusory threats with two different individuals is not nearly identical to Plaintiff's alleged conduct of mailing derogatory and violent threats to a person's home address on two different occasions. Indeed, both the quantity and the quality of these incidents distinguish the offenses.

Nevertheless, even if the Court were to assume that Plaintiff established a *prima facie* case, these Title VII claims would fail. Once the plaintiff establishes a prima-facie case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged employment action. *See, e.g., Holifield v. Reno,* 115 F.3d 1555, 1564 (11th Cir.1997);

*Davis,* 161 F.Supp.2d at 1321. The employer's burden is "exceedingly light." *Id.* This burden is one of production, not persuasion and consequently, the employer need only produce evidence that could allow a rational fact-finder to conclude that the challenged employment action was not made for a discriminatory reason. *See, e.g., Davis,* 161 F.Supp.2d at 1321.

Once the employer offers this legitimate, non-discriminatory reason, the burden returns to the employee to supply "evidence, including the previously produced evidence establishing the *prima facie* case, sufficient to permit a reasonable fact-finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Davis,* 161 F.Supp.2d at 1322 (*citing Chapman v. AI Transp.,* 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*)). Where an employer has subjected an employee to disciplinary action or terminated the employment of the employee for misconduct, the employee may show that the employer's proffered reason is pretextual by setting forth evidence that other employees, not within the plaintiff's protected class, who engaged in similar acts were not similarly treated. *Davis,* 161 F.Supp.2d at 1322.

Some cases suggest that a plaintiff in these circumstances may also establish pretext by showing that the employer's proffered reasons have no basis in fact because the employee did not engage in the conduct on which the employer acted. *See, e.g., Anderson v. Savage Labs., Inc.,* 675 F.2d 1221, 1224 (11th Cir.1982) (noting this means of proof in *dicta* in a case where employee conceded that he had violated the work rule on which his termination was based); *Davis,* 161 F.Supp.2d at 1322 (*citing Anderson* in overview of paradigm).

Other cases suggest that reliance on this method of proof of pretext is "problemat-

ic." *Cooper,* 115 F.Supp.2d at 1319 (*citing Walker v. NationsBank of Fla.,* 53 F.3d 1548, 1564 (11th Cir.1995) (Johnson, J., specially concurring)).

> Evidence showing a false factual predicate underlying the employer's proffered reason does not unequivocally prove that the employer did not rely on the reason in making the employment decision. Instead, it may merely indicate that the employer, acting in good faith, made the disputed employment decision on the basis of erroneous information. It is obviously not a violation of federal employment discrimination laws for an employer to err in assessing the performance of an employee. Thus, establishing pretext is not merely demonstrating that the employer made a mistake, but that the employer did not give an honest account of its behavior.

*Id.* (internal citations omitted). Rather than simply disputing whether he engaged in the conduct at issue, the employee could establish pretext by "presenting evidence tending to show that the predicate facts underlying the proffered reason were false" *and* that "the employer knew them to be false at the time of [its] purported reliance" or that "the proffered reason may involve a disputed fact of a kind that it is improbable that the employer could be mistaken about it." *Walker,* 53 F.3d at 1564 n. 7; *Cooper,* 115 F.Supp.2d at 1320.

Plaintiff has offered no evidence to establish that at the time the decision to discharge him from his employment was made, Mann, the decision-maker did *not* fire him on the grounds that he believed that Plaintiff had engaged in the off-duty misconduct of which Plaintiff was accused. In order to show that the proffered reason for the termination of Plaintiff's employment was pretextual, Plaintiff must show that the decision-maker based his decision to discharge Plaintiff on an unreasonable belief that Plaintiff had sent the letters to Morgan. *See, e.g., Silvera v. Orange County Sch. Bd.,* 244 F.3d 1253, 1261 (11th Cir.2001), *cert. denied,* 534 U.S. 976, 122 S.Ct. 402, 151 L.Ed.2d 305 (2001) (pretext means more than a mistake by the employer; actions taken based on a mistaken, non-discriminatory belief do not violate Title VII); *Lee v. GTE Fla., Inc.,* 226 F.3d 1249, 1253 (11th Cir.2000), *cert. denied,* 532 U.S. 958, 121 S.Ct. 1486, 149 L.Ed.2d 374 (2001) ("A plaintiff must show not merely that the defendant's employment decisions were mistaken, but that they were in fact motivated by sex."); *Equal Employment Opportunity Comm'n v. Total Sys. Servs., Inc.,* 221 F.3d 1171 (11th Cir.2000) (plaintiff could be properly discharged on defendant's good faith belief that she lied in an internal investigation); *Alexander v. Fulton County, Ga.,* 207 F.3d 1303, 1339 (11th Cir.2000), *reh'g denied,* 218 F.3d 749 (11th Cir.2000) ("a plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race."); *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991) (court's pretext inquiry is properly limited to whether the decision-makers believed the employee had engaged in conduct for which he was terminated and if so whether this belief was the reason for the discharge, not whether plaintiff was actually guilty of the conduct); *Conner v. Fort Gordon Bus Co.,* 761 F.2d 1495, 1501 (11th Cir.1985) (employer's belief, honest but mistaken, may nonetheless provide legitimate reason for discharge).

Despite Plaintiff's conclusory assertion to the contrary, he has offered no evidence which contradicts the evidence before this court that Mann terminated Plaintiff's employment because Mann believed that Plaintiff had sent the letters to Morgan, nor does Plaintiff provide evidence that Mann's belief was unreasonable. In the absence of such evidence and in the absence of any evidence that Mann was motivated by a prohibited discriminatory ani-

mus, the court finds that Defendant is entitled to summary judgment on these claims.

### E. Plaintiff's Title VII Claims Relating to the Restriction of His Access to the Bases

#### 1. Prima Facie Case

■ Plaintiff cannot establish a *prima facie* case for his claims that his restriction from Maxwell and Gunter in July of 2001 constituted retaliation for protected conduct, and consequently, Defendant is entitled to summary judgment on these claims.

> To establish a prima facie case of retaliation, [an employee] must show: (1)[he] engaged in protected activity; (2)[his] employer was aware of that activity (3)[he] suffered adverse employment action; and (4) there was a causal link between [his] protected activity and the adverse employment action.

*Maniccia*, 171 F.3d at 1369 (*citing Little v. United Tech.*, 103 F.3d 956, 959 (11th Cir. 1997)).

The Court finds that Plaintiff has failed to make out a *prima facie* case of retaliation arising out of the restriction of his access to the Air Force bases. "To establish that a plaintiff engaged in statutorily protected expression, . . . a plaintiff must show that [he] 'had a good faith, reasonable belief that the employer was engaged in unlawful employment practices.'" *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir.2002). Protected expression includes filing complaints with the EEOC or through an employer's internal grievance procedure. *Berman v. Orkin*

*Exterminating Co.*, 160 F.3d 697, 702 (11th Cir.1998) (filing EEOC complaint is protected conduct); *Rollins v. Florida Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir.1989) (internal complaints of discrimination are statutorily protected conduct).[40] Defendant does not dispute that Plaintiff engaged in protected activity in satisfaction of the first requirement of the *prima facie* case. On December 14, 1999, Plaintiff appealed his removal to the MSPB alleging that he was removed because of his race in violation of the law. On January 31, 2001, Plaintiff filed a formal EEO complaint of race and sex discrimination, alleging disparate treatment between his removal and the disciplinary action Morgan received for statements she made about Manuel. The Court finds that these complaints satisfy the first element of the *prima facie* case. Moreover, there is no dispute that Plaintiff's employer was aware of the protected conduct, thus consequently the second element of the *prima facie* case is also satisfied.

Defendant contends that Plaintiff fails to make out a *prima facie* case because he has not suffered an adverse employment action. Plaintiff counters by citing general employment discrimination cases which have held that a tangible adverse employment action occurs when the employee suffers "a significant change in employment status, such as hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a significant change in benefits." Doc. # 39 at p. 10. Plaintiff further argues that "[t]he Eleventh Circuit Court of Appeals once de-

---

**40.** In his deposition testimony, Plaintiff attributes the allegedly discriminatory decision to deny him access to certain portions of the Air Force bases at Maxwell and Gunter to retaliation against him *solely* for filing this lawsuit. While filing a civil action in which violations of Title VII are alleged is certainly protected conduct, Plaintiff's retaliation claim fails as a matter of law to the extent that it is based on the protected conduct of filing this action because it is clear from the undisputed evidence that the alleged decision to restrict his access occurred months before the lawsuit was filed. Consequently, the lawsuit could not have caused the restricted access.

scribed an adverse job action as including job titles and duties themselves as being protected under Title VII, even when there is no economic loss." *Id.* at pp. 10–11. Plaintiff points to no case law which arises out of an action similar to that about which he complains which holds that such an action constituted an adverse employment action that was actionable under Title VII.

The Court notes that the "adverse employment action" of which Plaintiff complains is the restriction of his access to the Air Force bases in Montgomery, Maxwell and Gunter.[41] It is undisputed that the access to these bases was a retirement benefit to which Plaintiff was entitled by virtue of his prior military service in the reserves; it was not a benefit tied to his *employment* as a civilian employee of the military. Plaintiff has not explained to this Court's satisfaction how the deprivation of a benefit, which in the first instance had nothing to do with Plaintiff's employment, could constitute an adverse employment action for purposes of a *prima facie* case of retaliation. All of the cases on which Plaintiff relies involve changes in the terms or conditions of the employment relationship between the employer and the employee, including changes in the employee's status or employment benefits.

However, in the instant case, the benefit of which Plaintiff was deprived had nothing to do with his employment. This benefit did not originate from the employment relationship and did not terminate when the employment relationship ended.

In his brief, Plaintiff asserts in a conclusory fashion that any decision prohibiting him from having access to these bases would affect his substantial economic benefits. The *only* evidence Plaintiff cites for this proposition is his affidavit.[42] The Court presumes that the portion of the affidavit to which Plaintiff is referring is the section of the affidavit which states that as a consequence of being restricted from these two military bases Plaintiff would be unable to use the NCO club, commissary, BX, and gas station at those two bases.[43] Unfortunately, Plaintiff provides no factual predicate for this contention that these facilities provided him with economic benefits such that the restriction of access to them would cause him to suffer an actionable significant change in benefits. For example, nowhere in his affidavit does Plaintiff testify that he had ever used these facilities.[44] Moreover, Plaintiff fails to produce any evidence from which this Court could find that access to these facilities provided him with economic

41. Plaintiff argues that there is a genuine issue of material fact as to the extent of the restriction on his access. Defendant contends that Plaintiff was only restricted from the Civil Engineering Compound of Gunter. Plaintiff's own testimony is a bit conflicted on the scope of the restriction. In some places, he gives sworn testimony admitting that the scope of the restriction was that which Defendant contends; however, in other sworn testimony, he claims that he believed that he was excluded from both Gunter and Maxwell bases in their entirety or at least that his attorney advised him to stay off of both bases. For purposes of this motion, the Court will view the facts in the light most favorable to Plaintiff and assume that Plaintiff was told he could no longer have access to either base.

42. Plaintiff fails to specify which portion of his affidavit he contends supports this contention and cites to it in its entirety.

43. There is no evidence before this Court that the restriction on Plaintiff's access to bases was anything other than a prohibition on his accessing the bases at Maxwell and Gunter, which does not extend to other military installations.

44. Although neither party bothered to point the Court to the Plaintiff's deposition testimony on this issue, the Court did locate a portion of Plaintiff's deposition testimony where he seems to imply that he did purchase products and use these services on base.

benefits; there is simply no support for this proposition in Plaintiff's affidavit or his deposition. Simply put, the Court has no evidence before it that there was any benefit to Plaintiff of availing himself of the BX, the NCO Club, the Commissary, or the gas station on base. The Court acknowledges that there may in fact be some benefit to the use of these services, but to so find in this case would be pure speculation as the record is completely devoid of any evidence one way or the other. Thus, due to Plaintiff's failure to offer evidence, rather than conclusory arguments, from which a reasonable jury could find that he has suffered a loss of any benefit as a result of the denial of his access to the base and due to Plaintiff's failure to show that the benefits, if any, lost were *employment benefits,* the Court finds that Defendant is entitled to judgment as a matter of law on this claim. *See, e.g., Peppers v. Coates,* 887 F.2d 1493, 1498 (11th Cir.1989) ("If the party's response consists of nothing more than a repetition of his conclusory allegations, the district court must enter summary judgment in the moving party's favor."); *Garcia–Cabrera v. Cohen,* 81 F.Supp.2d 1272, 1285–86 (M.D.Ala.2000) (To survive summary judgment, a plaintiff must produce at least some evidence to support his claim and may not rest on bare unsupported allegations).

Further, even if this Court were to assume *arguendo* that Plaintiff established the adverse action element of his retaliation claim, Defendant is still entitled to summary judgment on this claim because Plaintiff fails to present evidence of any causal link between any protected activity and the decision to restrict Plaintiff's access to the bases.

It is undisputed that there is no direct evidence which ties the decision to deny Plaintiff access to Maxwell and Gunter to the protected conduct in which Plaintiff engaged, namely, his repeated complaints that he was being subjected to discrimination on the basis of his race and sex. For example, no representative of Defendant ever told Plaintiff that he was being banned from the bases as punishment for complaining about alleged race and sex discrimination. Moreover, Defendant has submitted evidence that the decision to restrict Plaintiff from the bases was made because Morgan had complained that she feared for her safety with Plaintiff around. Plaintiff has offered no evidence which disputes or calls into question the fact that Morgan voiced such fears. Indeed, he offers no evidence which calls Defendant's reliance on this proffered reason into question. Instead, Plaintiff's response is to confound his protected conduct, namely his complaints of race and sex discrimination, with the actual cause of the decision to ban him from the bases, namely, Morgan's concerns about her own safety. Put another way, Plaintiff mistakes the relevant inquiry presented by his retaliation claim. He argues that the issue is whether there is any evidence that the decision to bar him from the bases was in any way connected to any person involved in the factual situation which caused his termination, for example, Morgan. However, the real issue is whether there is any evidence which connects the decision to bar him from the bases to his complaints that he was subjected to race and sex discrimination. *See, e.g., Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir.1993) (In order to prevail on a retaliation claim, a plaintiff must establish the requisite causal connection between her statutorily protected conduct and the adverse employment action); *Gaddis v. Russell Corp.,* 242 F.Supp.2d 1123, 1145–47 (M.D.Ala.2003) (same). Simply put, Plaintiff offers no evidence of causation to satisfy the final element of the *prima facie* case because he presents no evidence which in any way connects the

decision to bar him from Maxwell and Gunter to his *discrimination complaints.*

Alternatively, to the extent that Plaintiff argues that the timing of the events constitutes some circumstantial evidence in support of the causation element, this argument fails as a matter of law. Where, as here, more than seven months elapse between the last of Plaintiff's protected conduct and the allegedly retaliatory action, the timing of the events does not constitute circumstantial evidence of causation. *See, e.g., Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (citing affirmatively several court of appeals decisions for the proposition that a three to four month gap is insufficient to establish the causal relation prong in a retaliation case); *Wascura v. City of South Miami,* 257 F.3d 1238, 1244–45 (11th Cir.2001) (While a close temporal proximity between two events may support a finding of a causal connection between those two events, the three and one-half month period between plaintiff's protected conduct and the adverse employment action challenged does not, standing alone, establish a causal connection); *Gaddis,* 242 F.Supp.2d 1123, 1145–47 (granting employer summary judgment on three of plaintiff's retaliation claims because plaintiff was unable to establish the requisite causal connection between her protected conduct and her adverse employment actions where lapses of time six months or longer existed between the protected conduct and the adverse employment actions).

### 2. Legitimate, non-discriminatory reason and evidence of pretext

Moreover, the Court finds that even if Plaintiff could be said to have established a *prima facie* case of retaliation, he has legally insufficient evidence to create a triable issue with respect to Defendant's proffered legitimate, non-retaliatory reason for the decision to restrict him from some areas of the bases, and Defendant is entitled to summary judgment on these claims for this additional reason.

If the plaintiff makes out a prima facie case, the burden shifts to the defendant to articulate a legitimate reason for the adverse action. *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. 1817. If the defendant does so, the plaintiff must show the defendant's proffered reason for the adverse action is pretextual. *Id.* at 804, 93 S.Ct. 1817. Simply put, it is Plaintiff's burden to demonstrate that Defendant's proffered reason for barring him from the bases was not the *true* reason for the decision. He must demonstrate " 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.' " *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir.1997).

In this case, Plaintiff simply challenges the wisdom of the Defendant's decision to restrict his Air Force base access and has not presented the court with any evidence that the Defendant's stated reasons are unworthy of belief. As a result, Plaintiff has failed to produce sufficient evidence for a reasonable factfinder to conclude that the Defendant's stated reasons are pretextual. Thus, summary judgment is due to be granted on this claim as well.

### VII. CONCLUSION

For the reasons stated above, it is hereby ORDERED as follows:

(1) The Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. # 28) is GRANTED.

(2) The trial scheduled in this matter is CANCELLED.

(3) All pending motions are DENIED as moot.

A separate final judgment will be entered in accordance with this Memorandum Opinion and Order.